## No. 2732

### Second Circuit

---

## BANK OF WEST CARROLL IN LIQUIDATION v. BROWER

---

(Jan. 28, 1927.  Opinion and Decree.)

---

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Party Walls—Par. 3, 6.**

In view of Articles 678, 679, 681 and 682 of the Civil Code, every co-proprietor of a wall in common may be exonerated from contributing to the repairs and rebuilding by giving up his right of common, provided no building belonging to him be supported by this wall.

2.  **Louisiana Digest—Party Walls—Par. 3, 6, 8.**

An adjoining landowner who repairs a wall in common which was damaged by a fire cannot force his neighbor to contribute to this repair by filing a lien and privilege on the building for the repairs made because Articles 3262 and 3264 of the Civil Code do not apply; Article 679 of the Civil Code giving him no right to make his neighbor contribute.

Appeal from the Seventh Judicial District Court of Louisiana, Parish of West Carrol. Hon. John R. McIntosh, Judge.

Action by Bank of West Carroll in Liquidation against D. M. Brower.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

W. L. Bagwell, of Rayville, attorney for plaintiff, appellee.

George Wesley Smith, of Rayville, attorney for defendant, appellant.

ODOM, J.    The plaintiff bank and defendant owned brick, buildings on adjoining lots in the town of Forest, West Carroll parish, Louisiana.   The plaintiff's lot is a small one, only twenty by forty feet, situated on the corner of a block.   The north and west walls of plaintiff's building were common or partition walls and were built up as high as the ceilings. They were built strong enough to support the ceiling and roofs of both buildings.

In December, 1922, while the plaintiff bank was in process of liquidation, the ceiling, roofs and all other woodwork of both buildings were destroyed by fire, but the walls being of brick, were left standing.

The bank being in liquidation had no further use for a building there and for that reason did not wish to repair it. About two years later, however, on November 10, 1924, the defendant, Brower, let a contract for the repair and reconstruction of not only his own building but the bank building as well for $2270.00.   The contract provided that the contractor was to repair—

"* * * the brick building in Forest, La., owned by party of the first (Brower) and Bank of West Carroll."

Under this contract there was a new roof put over the bank building, the ceiling was repaired, the casings, window and doors were put in, and, in fact, everything was done to repair the damage done by the fire, except the replacing of certain railings inside the bank building.

The bank did not join in the contract for repairs, nor did it agree to have its building repaired.

But on November 12, 1924, two days after Brower let the contract, he addressed the following letter to W. L. Bagwell, liquidator of the bank:

"Please take notice that I am preparing to let contract to repair the fire damages done to my building and the building occupied by the Bank of West Carroll, which buildings we own jointly.   It is impossible to repair one without repairing both.   The contract for the joint repair will be $2279.00.   The pro rata of this for the Bank of West Carroll is estimated to be by the contractor, $850.00.
        "Very respectfully,
                            "D. M. Brower."

The bank refused to pay any part of the bill for repairs.

On January 27, 1925, Brower made affidavit before a notary public as follows:

"State of Louisiana,
"Parish of West Carroll.
"Before me, the undersigned authority, personally   came   and   appeared   D.   M.

Brower, who states on oath that the attached bill for lumber, roofing, doors and windows, and labor for work performed in doing repairs, is a true and correct bill of material and labor furnished in repairing the building known as the West Carroll Bank Building and situated on the southeast part of lot 6 block H of the town of Forest, Louisiana. That said bill, amounting to $900.00, is correct to the best of my information and belief; that none of said bill has been paid, and that said material and labor was used and furnished in repairing said above described bank building. That it was necessary to make repairs in the repairing of affiant's brick building, the above described bank building being a part of affiant's building, and that it was impossible to make repairs on affiant's building without making said repairs on the bank building belonging to West Carroll Bank. The said West Carroll Bank refusing to make such repairs and affiant being compelled to make such repairs in order to preserve and protect his own property."

He caused this affidavit to be inscribed in the mortgage records of West Carroll parish in order to preserve his lien and privilege on the building.

The plaintiff bank, through its liquidator, brought this suit to have the inscription of this lien erased from the record, alleging that it is not liable for the amount claimed.

It further alleged that the defendant was a trespasser upon its property and had nailed up the doors and windows of its building and had permitted to be removed from the building a time clock attached to the safe valued at $300.00, for which amount it asked judgment.

Defendant in answer admitted that plaintiff owned the brick building claimed by it and the lot of ground on which it was situated, and he alleged that after the fire the walls of plaintiff's building were left standing exposed to the elements without protection with all woodwork gone; that he made the repairs and expended said sum—

"* * * for the purpose of protecting and preserving his own property and for the purpose of rendering the entire property subject to and fit for habitation."

It is further alleged that plaintiff owned the outside walls of its building and only a half-interest in the inside walls, and that plaintiff's property for two years stood unprotected, was rapidly deteriorating and falling into decay, and that it was his duty to have it repaired along with his own; that it was not practical to repair his own building without repairing that of plaintiff at the same time.

He reconvened, asking for judgment against plaintiff for $900.00, plaintiff's pro rata part of the cost of the repairs.

The district court rendered judgment for plaintiff, ordering whatever lien may have arisen from the inscription of defendant's affidavit in the mortgage record of the parish cancelled and erased, but rejected its demand for $300.00 money judgment, and also rejected defendant's demand in reconvention.

Defendant appealed.

## OPINION.

The testimony does not show, in fact it is not contended, that any one representing the plaintiff bank authorized defendant to make the repairs on its building. There was some conversation between defendant and Mr. Bagwell, liquidator of the bank, about the repairs, but no agreement was reached between them.

As already stated, the two buildings were on adjacent lots. The walls between the two buildings were common walls.

otherwise neither party had any interest in the building of the other.

Defendant wanted to repair his building; plaintiff had no further use for its building, and therefore would not repair it.

We have been referred to no law and we know of none authorizing an adjoining property owner to repair his neighbor's property and charge the expense to him in the absence of an agreement to that effect.

The fact that plaintiff's property, that is, the brick walls, were left unprotected and exposed to the elements and in consequence would soon fall into decay and ruin was not a matter which should concern the defendant. If the plaintiff bank did not which to protect its property that was its own affair.

But we are convinced from all the testimony and from statements in the brief filed by defendant's counsel that defendant made the repairs to the bank building not through any desire to benefit plaintiff but because it was to his advantage to do so.

Defendant testified that the two common walls, one on the side and the other on the rear of the bank building, were constructed of cheap, common brick; that the plaster was caused to fall off by the fire; that in the condition in which they stood after the fire and at the time the repairs were made they were unsightly and absorbed water and were unsafe. It therefore follows that if these walls had been used by him it would have been necessary to strengthen and plaster them at some expense. He says that the outside walls of plaintiff's building were constructed of hard brick which cost practically three times as much as these used in the inside walls. These outside walls

of the bank building were in good condition and by repairing the two buildings he would have the advantage of these outside walls and would be saved the expense of repairing the inside or common walls.

Besides, Mr. Hicks, who repaired the buildings, testified that if defendant's building had been repaired without repairing the bank building, these inside or common walls would have to be raised about six feet at a cost of something like $300.00 and that in the condition they were then they would not support the roof; it would have been necessary to strengthen them.

Mr. Sims, another builder, testified that it would have been necessary to raise the inside walls eight feet and that they would not support the additional weight.

These inside or common walls it seems would have supported the weight of the ceiling but not of the roof. Therefore defendant constructed the roof over both buildings and used the outside walls of the bank building to support it. Defendant was therefore saved the expense of raising and strengthening the common walls which would have become the outside walls of his building if he had not made use of the outside walls of the plaintiff's building.

The law in cases of this kind is clear.

Article 678 of the Civil Code provides that repairs to and building of walls in common are to be made at the expense of all who have a right to the same in proportion to their interest therein; and Article 679 reads as follows:

"Nevertheless every co-proprietor of a wall in common, may be exonerated from contributing to the repairs and rebuilding, by giving up his right of common; provided no building belonging to him be actually supported by the wall thus held in common."

After the fire plaintiff abandoned the use of the walls in common. No part of its building was supported by these walls. Therefore under the plain letter of the Code it cannot be charged with the repairs.

As stated, in order for defendant to make further use of these walls it was necessary for him to raise and strengthen them.

This is also provided for in the Code, for Article 681 provides that—

"Every co-proprietor is at liberty to increase the height of the wall held in common, but he alone is to be at the expense of raising it * * *."

And Article 682 reads as follows:

"If the wall held in common cannot support the additional weight of raising it, he who wishes to have it made higher is bound to rebuild it anew entirely at his own expense, and the additional thickness must be taken from his own property."

Defendant, of course, was at liberty to make use of these common walls, to raise them, to make them thicker and stronger; but the expense for doing so must be borne by him, and the plaintiff cannot be called upon for any part of the expense as long as it abandons and makes no use of them.

Counsel for defendant cites Articles 3262 and 3264 of the Code in support of his contention that the defendant is entitled to a privilege on the building for the repairs made; but these articles have no application in a case like this.

The lower court rejected plaintiff's demand for $300.00. Plaintiff did not appeal nor has it asked that the judgment be amended so as to allow that amount.

For the reasons assigned, it is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed; all costs to be paid by defendant.