GRAND LODGE K. P. OF LOUISIANA, JURISDICTION OF THE SUPREME LODGE, KNIGHTS OF PYTHIAS OF NORTH AMERICA, SOUTH AMERICA, EUROPE, ASIA, AFRICA AND AUSTRALIA v. THOMSON AND BROS., LTD.

(March 24, 1930. Opinion and Decree.)
(April 7, 1930. Rehearing Refused.)

Frank B. Smith, of New Orleans, attorney for plaintiff, appellant.

McCloskey & Benedict, W. Sommer Benedict, of New Orleans, attorneys for defendant, appellee.

JANVIER, J. Plaintiff is the owner of certain real estate situated at the corner of Gravier and Saratoga streets, on which, during the year 1909, it erected an office building of some nine or ten stories.

Defendant owns the adjoining property fronting on Gravier street, and has constructed a five-story concrete garage building thereon.

Plaintiff, which, on account of its lengthy and geographically comprehensive name, we shall hereafter call the Pythians, contends that, when defendant, which corporation we shall hereafter call Thomson Bros., erected the garage building, they, Thomson Bros., made use of a certain portion of the wall of the building of the Pythians, and thus made the portion so used a common wall, with the result that Thomson Bros. is liable to the Pythians for one-half the value of the portion of the wall so used. It is agreed that the portion of the wall used is worth the sum of $1,115.26, and that, if there is any liability in Thomson Bros., the amount thereof is $557.63, or one-half the total value of the wall, but Thomson Bros. maintain that nothing is due, because the wall is not being used within the contemplation of article 675 et seq. of the Civil Code, and because they were not benefited by the fact that the wall was already in existence, but were, on the contrary, as a result of the wall, put to considerable additional expense in the construction of their building.

It is admitted that the wall of the Pythian Temple "straddles" the property line, and, in fact, extends over on the property of Thomson Bros. approximately nine inches, as is permitted under article 675 of the Civil Code. It therefore follows that, when Thomson Bros. erected their building, they had the legal right to the use of the wall and, upon paying one-half the value thereof to the Pythians, had the wall been sufficiently strong, could have used it as the support for one side of their garage building.

But the evidence, which is not in dispute, shows that the wall of the Pythian Temple, though that building was some nine or ten stories in height, was not of sufficient strength to also support the side of the building which Thomson Bros. contemplated, though their plans called for a structure of only five stories. It thus appears that, had Thomson Bros. desired to exercise their legal right to the common wall in question, they could not have done so due to its inherent inability to withstand the additional weight. In this situation their architect and their structural steel expert evolved a plan by which they might employ cantilever construction, which would render it unnecessary to support any part of their structure on or in the wall of the Pythian Temple.

This scheme was adopted and the building was erected, but the evidence, without contradiction, shows that, by reason of the fact that the above-referred to plan of cantilever construction had to be adopted, the building cost Thomson Bros. some $1,500 more than it would have cost to erect the entire structure had the wall of the Pythian Temple not been in the way.

The wall of the Pythian Temple, which is the one it is now contended is a common wall, was not made use of in any way whatever as a support for any part of the building, but it did form, and now forms, the side inclosure of the structure of Thomson Bros. It does not support any part thereof, nor is any part of the Thomson Bros. building connected therewith.

Under these circumstances, Thomson Bros. refused to pay for one-half the wall, as they contend that, not only have they lost some nine inches of their land, but they have been forced to spend in the erection of their building $1,500 more than would have been necessary had there been no wall already in existence. They also contend strenuously that they are not using the wall within the contemplation of the articles of the Code, and therefore should not be required to pay for any part of it.

The contention that the wall is not being used because no part of their building rests upon it seems, however, to have been answered by this court in Canal-Villere Realty Co. vs. Gumble Realty & Securities Co., 1 La. App. 123. The facts of that case appear to be so nearly like those presented here that it is indeed difficult to find a distinction. A careful examination, however, discloses two points, one of which, in our judgment, distinguishes the cases, and the other of which may form a basis of differentiation.

The distinction which we think is plain is that, in the Canal-Villere case, the defendants, who used the wall which had been erected by the other parties, did so voluntarily, and were benefited thereby, while here, not only was no benefit received, but an actual additional expense, or loss, was necessarily incurred, and defendants would have preferred not using the wall at all. The point which we think may possibly form the basis for a differentiation of the Canal-Villere case from the case now before us is that, in the Canal-Villere case, the roof of the building erected by the defendants was "flashed" into the wall of plaintiff's and was "tied" into the front and rear ends of plaintiff's building. It is true that, in that case, we held squarely that it was not necessary that the wall in question should support in any way the building of defendants and that the mere use of it as an inclosure was sufficient to render the user liable for his half of what, by such use, was made the common wall, but, as we have stated, the facts of that case did not necessarily require so broad a statement. As we read that decision, it was based largely on seven earlier decisions of the courts of this state, and an analysis of those seven decisions indicates that they do not necessarily require so broad a doctrine as was announced in the Canal-Villere case. For instance, in Graihle vs. Hown, 1 La. Ann. 140, it appeared that the defendant "used the wall * * * for the support of his roof, floors and walls." Of course, under that situation the defendant was liable for his half of the common wall. There was no question as to the obligation to pay for half of the wall. That this obligation existed was conceded. The dispute arose over whether the value should be determined as of the time of the construction of the second building, at which time the joint use of the wall commenced, or as of the time of the original construction.

In Murrell. vs. Fowler et al., 3 La. Ann. 165, the question of how much use is necessary to render a wall a common one was not involved. The two properties in question had been owned by one owner, and it was contended that there had been thus established by the original proprietor by destination, which destination is known as

the "Destination du pere de famille," a common wall in favor of both estates, and that under such circumstances one owner could not thereafter charge the other for the use thereof.

In Davis vs. Grailhe, 14 La. Ann. 338, the opinion does not show just what use was made of the wall, but raises a very strong presumption that it was used to actually support the house. It states that the defendant built his house and used the wall in common.

In Auch vs. Labouisse et al., 20 La. Ann. 553, the building rested on the partition wall, so that the question of how much or how little use was necessary to render a wall a common one was not presented, and the only issue involved was whether the owner, who leases his land, is liable for half of the wall erected by his neighbor, and used as a common wall by his tenant. There was also involved in that case the question of whether the value of the wall should be determined as of the date of the commencement of the joint use, or of the date of original construction.

In Florance vs. Maillot et al., 22 La. Ann. 114, the extent of the use was not in dispute, and the only question at issue was that of determining the method of fixing the value of the common wall.

In Winter vs. Reynolds, 24 La. Ann. 113, a purchaser of property was held liable for half the cost of a party wall, although the joint use of the wall was commenced, not by him, but by his ancestor in title. The use consisted in resting a shed on the wall, so that here, again, we find the question of how much use is necessary was not involved; it being conceded that resting a shed on the wall made the wall a common one.

In Chism & Boyd vs. Lefebre, 27 La. Ann. 199, the extent of use necessary to make a wall a common one was not involved. The question there was whether a purchaser of land could be held liable for half of a common wall, where the joint use had commenced prior to his purchasing the land.

It thus appears that the cases cited in Canal-Villere Realty Co. vs. Gumble Realty Co., supra, do not require a holding that the mere use of a wall as an inclosure makes the wall a common one and renders the user liable for half the value. Nevertheless, we think that the doctrine announced in that case, as applied to the facts of that case, is entirely sound, and we believe that, where one voluntarily uses and receives benefit from the use of a wall already in existence, he should be required to pay half the value thereof. But it seems that it would be most unreasonable to extend such a doctrine to a case like the present one, in which not only is no benefit derived, but an actual additional expense is forced upon the user. We would find in this case, if we required Thomson Bros. to pay for one-half the wall, that they have lost nine inches of their property, that they were put to the additional expense of some $1,500 in erecting their building, and that, in addition thereto, they must now pay to the Pythians something over $500 for a wall which they would much rather not have had.

Our conclusion is that the use of the wall for any purpose makes the user liable, provided the word "use" be interpreted to mean voluntary and beneficial use. Here there was no voluntary use, because Thomson Bros. would have much preferred not to use it at all, and there was no beneficial use, because, by using it, they incurred additional expense.

We are not prepared to pass on the question as to whether or not any part of the additional expense can be recovered from the Pythians, because that question was not presented in this case; Thomson Bros. merely contenting themselves with the request that their rights to such recovery, if they have any such rights, be reserved to them. If any such rights exist, claim thereunder should be presented in another suit, and we therefore feel that the district court was correct in reserving to them such rights, if any exist. The trial court felt as we do, that defendant was not liable for half of the wall in question.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed.