JANVIER, Judge.
Plaintiff, Warren A. Doll, and defendant, Anthony Cacioppo, own adjoining properties in the 600 block of Decatur Street, in New Orleans. At the present time there is no building on the property of Doll, but there is a three-story brick building on the property of defendant Cacioppo, and there remains a wall which now forms the side of the building of Cacioppo and which formerly constituted a party or common wall serving to enclose his building on that side and formerly serving as the side wall of the building which was once on the property of plaintiff, Doll. The wall is 18 inches thick and between 50 and 60 feet high. Nine inches of its width is on the property of each of the parties, the division line between the two properties being the center line of the wall. When there was a building on the property of plaintiff that building was three stories in height and the building of defendant was four stories in height, but the total height of the two buildings was the same.
The property of Doll, plaintiff, was formerly owned by Warren Realty Company of which he, his brother, Emile B. Doll, and their father seem to have been the only stockholders, though whether they were the sole stockholders is of no importance.
During the ownership of Warren Realty Company, the Division of Regulatory Inspections of the City of New Orleans de-dared the building on that property to be unsafe and dangerous and ordered that it be repaired or demolished, and the then owner, Warren Realty Company, demolished the building, leaving, however, the wall which formed the side wall of defendant’s building. Later, during the ownership of the present owner, Warren A. Doll, the said Department of Inspections of the city declared the wall to be unsafe and ordered the owners of the two adjoining properties to repair it, or, in the alternative, to demolish it. Doll took the position that he no longer had any need for all of the wall and that therefore he was not obligated to pay any portion of the cost of repairing it and, since Cacioppo was unwilling to pay the entire cost, nothing was done and the two property owners were ruled into the Municipal Court to show cause why they should not be fined or imprisoned for refusing to comply with the order of the said Department of the city.
It was found that the cost of making the necessary repairs would amount to $1,500, and, in order to avoid the threat of criminal prosecution, it was agreed that Doll would deposit with or would pay to the attorney for Cacioppo one-half of this sum, to-wit $775; that this payment or deposit would be made under protest; that the wall would be repaired by Cacioppo, and that then the question of whether Doll was liable for his share of the repairs would be submitted to litigation. When Doll made the payment under protest, he sent with it a letter setting forth the facts, giving his reasons for feeling that he was not liable for any portion of the cost and making the following statement in the letter:
“The wall is a community wall and I have no intention of relinquishing my ownership therein under any conditions.”
Doll then brought this suit against Caci-oppo alleging that he would have use for not more than the lower 12 feet of the wall since he had no intention of ever *690 erecting a building of more than 12 feet in height and would therefore not require the full 50 or 60 feet height of the wall and averring that he should be held liable for no portion of the cost beyond the 12 foot height. He alleged that on this basis his share would be not more than $200 and he prayed for judgment condemning Cacioppo to return to him $575, being the difference between the $775, which he had paid or deposited and the $200 which he conceded he owed for his portion of the cost of repairing the wall.
Defendant in effect admitted all of the allegations of the petition but alleged that the wall in its entirety was a party wall and that consequently plaintiff was liable for one-half of the cost of making the repairs.
There was judgment dismissing plaintiff’s suit and he has appealed.
Doll’s contention seems to be based on the theory that, under Articles 678 and 679 of our LSA-Civil Code, he could avoid liability for any portion of the cost of repairing the wall by surrendering his common interest in it. Article 678 provides that repairs of walls in common “are to be made at the expense of all who have a right to the same, and in proportion to their interest therein.” And Article 679 allows a “co-proprietor of a wall in common * * * [to] be exonerated from contributing to the repairs and rebuilding, by giving up his right of common * *
Counsel for Doll argues from this that if Doll could be completely exonerated by giving up in its entirety his right of common, he should be permitted to reduce his obligation as owner in common in proportion to his intention to reduce his use of the wall.
It is interesting to note that our Code provides for a situation which, though somewhat similar to that which confronts us, is not identical. And it is important to note that Doll has no intention of giving up in its entirety his right of common. In the letter which he sent when he made the payment or deposit, he referred to the wall as a community wall and stated that he had no intention of relinquishing his ownership under any. conditions.
The somewhat similar situation which is provided for in those articles of the Code to which we have referred is recognized by the redactors of the Code who realized that there may be two adjoining property owners who may not-have the same desire for nor the same use of a wall in common.
Article 675 provides that where there are two such adjoining owners and there is no common .wall, if one of the owners desires such a wall he may, under the conditions set forth, build the wall “at least as high as the first story,” and in- doing so may rest one-half or nine inches of the 18 inch wall on the land of the neighbor, but he cannot compel the neighbor to pay for any part of the said wall. , However, under Article 676, if the neighbor then or later desires to make use of the wall he may convert it into a common wall by paying to his neighbor who has constructed it “the half of what he .has laid out 'for its construction * * Thus the wall as “high as the first story” becomes a common wall, and Article 677 provides that where there is such a wall, “as high as the upper part of the first story,” there is a presumption that it is a wall in common. Article 681 then provides that if either neighbor alone desires to increase the height of such a wall, he must bear “the expense of raising it, and of repairing and keeping the part above the height of the wall in common, in good order; * * Article 683 then provides that later the other neighbor who did not contribute to the raising of the additional height of the wall may use this additional height and may cause it to become common “by paying one-half the expense of such raising * *
It is contended on behalf of Doll that, because of these various articles, if the wall which is here involved were being erected *691 for the first time, Doll could not be compelled to pay more than his one-half of constructing the wall up to the top of the first story, and that it should follow from this that, since he desires to use the wall only to the height of the top of the first story, he should not be compelled to pay for more than the proportion of the cost which the one-story height bears to the total height of the present wall.
If Doll had indicated his intention of abandoning the wall entirely, it is possible that he could have “exonerated” himself from all liability. We do not say that he could have done so for we are pleased to find that that complicated question is not presented here. If he had completely freed himself from all /liability by abandoning his interest in the wall, there is a possibility that he could have done so and that then later, had he desired to use the wall up to the height of the top of the first story, he could have been required to pay only a proper proportion of the cost of the wall or of the repairs, though, here again we are pleased to say that that question is not .before us. Having refused to surrender his interest in the wall we think that he is a common owner of the entire wall and we are certain that he could not himself establish the proportionate amount of repairs which he should bear.
The proper department of the city had condemned'the wall. It had to be destroyed or repaired. He did not agree to its destruction. He insisted that he was to remain an owner in common. By doing so he made himself liable for the cost of making the repairs which were required. There is no dispute over the cost of those repairs. He is liable for one-half of that cost. He has paid that one-half. He cannot recover it back.
We have not overlooked the authorities cited by counsel. Plaintiff relies upon the decision of the Court of Appeal' for' the Second Circuit in Bank of West Carroll v. Browet, 5 La.App. 469. He cannot derive any comfort from that decision. There the plaintiff Bank and the defendant owned adjoining properties. The Bank was in liquidation. During the liquidation both properties were practically destroyed by fire, though the common wall between them, which was of brick, was left standing. The Bank which was in liquidation had no further use for the wall but the other owner, Brower, found it to his interest to rebuild his own building and in doing so found it necessary to repair the wall and he also found it advisable to put on a new roof over the bank building. When the liquidator refused to pay any portion of the cost of repairing the wall or the cost of the roof over the bank building, Brower recorded a lien against the bank’s property. The liquidator took the matter to Court in an effort to erase the lien and Brower in that suit resisted the attempt and also claimed the $300 which apparently had been expended in repairing the wall and replacing the roof. It was held that the bank in liquidation could not be required to pay any portion of the cost since it had abandoned its interest in the wall. But, we repeat, the bank abandoned its interest in the wall and made no effort to reclaim or use any part of it. The situation here is entirely different.
Counsel for defendant cites a decision of this Court, Canal-Villere Realty Co. v. S. Gumble Realty & Securities Co., 1 La.App. 123. There there were two adjoining property owners, one of whom found it advisable to use a certain wall in common only to the height of 25 feet although the wall itself apparently was about 45 feet in height. It seems to have been the contention of the adjoining property owner who used the wall only to the height of about 25 feet that it should not be called on to pay the full one-half of the cost of making certain repairs to the wall. This Court, citing some of the articles to which we have referred, held that that owner was liable. for. a full *692 one-half of the cost and made the following statement:
“ * * * The contention that because the Dunn building covered a height of 40 feet and the Gumbel building only 21 feet, that Gumbel must be credited with the value of the difference is ‘novel’ as counsel admits, but does not appeal to us.”
This statement indicates a view in accordance with our conclusion in the case at bar.
In Grand Lodge, etc. v. Thompson & Bros., 13 La.App. 258, 127 So. 32, we considered an interesting common wall situation in which an adjoining property owner had erected a wall which was not strong enough to support the building which the other adjoining owner desired to construct. Therefore the other owner by the use of cantilever construction erected a building which was in no may supported by the already existing wall of the adjacent owner, though that wall did serve as an enclosure. The owner of the wall brought suit to recover one-half of the cost of the wall and we held that since the wall was not used in common, the other owner could not be compelled to pay a portion of the cost or of the value thereof. This is not the situation which we find here.
In Tulane Law Review, Vol. 4, page 619, in an article entitled “May the Servitude of Party Wall be Avoided?” the author discusses the very interesting question but throws no light on the question which is before us. As we have stated, our opinion is that since the plaintiff did not abandon his interest in the wall which was already in existence, he cannot recover back any portion of the cost of making the necessary repairs.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.