YARRUT, Judge.
Plaintiffs appeal from a judgment dismissing their suit against Defendant, seeking to recover half the cost of $4543.27, which Plaintiffs allege they paid for repairs to the party wall separating their two buildings in the business section of New Orleans.
Plaintiffs are owners of the building on the southeast corner of Gravier and Caron-delet Streets, and Defendant the owner of the building fronting Gravier Street, adjoining, both between Carondelet and St. Charles Streets. The wall separating the buildings is a party wall which, in the fall of 1954, Plaintiffs allege was in need of immediate repairs and renovations. Defendant was notified that repairs were made by Plaintiffs at a cost of $4543.27, and Defendant was requested to pay half the cost. Defendant refused payment, hence this suit for $2271.63, with interest and costs.
Defendant denied any and all liability. The District Court rendered judgment in favor of Defendant, dismissing Plaintiffs’ suit, at Plaintiffs’ cost.
The District Judge in his reasons for judgment held that Defendant was not given an opportunity of inspection and obtaining of bids as required by LSA-C.C. Art. 678; and that he was convinced the party wall in question was not repaired in the manner contemplated by LSA-C.C. Art. 678, but was strengthened solely in the interest and to suit the needs of Plaintiffs.
Plaintiffs contend that Defendant’s building, as well as the buildings between Defendant’s and St. Charles Street, pushed Plaintiffs’ building in the direction of Car-ondelet Street and caused the damage to the party wall. Defendant, however, contends that Plaintiffs’ building pulled on the party wall by settling towards Carondelet Street, and that the damage was due to the outside wall of Plaintiffs’ building pulling away.
Plaintiffs’ Consulting Engineer testified that, upon his examination of the structure, the exterior wall on the Carondelet Street side, at the first floor level, was leaning out into the street approximately several inches. From the second floor up, the wall was practically plumb. On examining the footing, *663 he found it to be deteriorated, the mortar and old cypress wood grillage beneath the brick disintegrated. From the ground floor to the second floor the party wall exhibited the most deterioration. Upon opening the party wall, he found the mortar crumbled in many spots, and towards the rear of Plaintiffs’ building a bulging of the wall. By measurements he determined the wall was leaning slightly towards Caron-delet Street; the structural integrity was in doubt though the exterior wall from the second floor up, and the beams appeared to be in good condition. He further testified he found no evidence of the exterior separating from the interior wall. The wood joists he found exposed, but no significant pulling out of the joists was determined.
On cross-examination he testified there was slight slippage of the exterior wall, and slight evidence of the joists pulling but “nothing consistent with the major distortion of the building which amounted to six or seven inches.” New footings, he testified, were put in the exterior wall on Caron-delet Street after the wall was torn out; and a certain amount of “tie-in” between the Carondelet Street wall and the party wall by structural steel. Also, that two buttresses were put on the party wall to prevent the shifting outward to Carondelet Street.
Jules K. de la Vergne, Architect, and one of the Plaintiffs, corroborated the observations of the Consulting Engineer. Neither of these two experts had examined Defendant’s side of the party wall.
A Consulting Engineer, of the firm of B. M. Dornblatt & Associates, was employed by Defendant to inspect its building to determine the cause of the cracks in Defendant’s side of the party wall, and what movement had taken place and its cause. The cause of the movement he found was a partition wall within and crossing Plaintiffs’ building, the masonry of which had developed a large crack (¼ to ½ inch) upon the second floor. He said the movement was not coming from the Defendant’s building. If movement or push came from the Defendant’s side, it would not open a crack, but would close it. Hence, it was “a pull” rather than “a push,” from Plaintiffs’ building which opened the crack. Photographs introduced in evidence show opening indicative of “a pull” rather than “a push” on the party wall.
Mr. Blessey, a Structural and Consulting Engineer, testified for Plaintiff. He walked through Defendant’s building with the contractor, but did not make a careful inspection and was unable to enlighten the court with reference thereto, explaining his reason as:
“At the time the work was being done, I wasn’t thinking about the neighbors next door (meaning Defendant). I had no knowledge we were getting anything financially with the neighbors next door * * * I was not thinking in terms of the owner next door as being a participant; it never occurred to me. Maybe it is none of my business really. My responsibility was instructing the architect about what the work on the building would be * * *. I couldn’t determine anything by walking through the building. My recollection of my walking through at the time was that I could not conclude anything as to construction of the interior of the building * * *. I would have had to carefully inspect. I would have had to expose the wall in many places in order to inspect thoroughly into the structure of the neighboring building (Defendant’s) and ask these men to inspect their building to find out what happened to their building.”
This testimony is significant because the President of Defendant-Association, after receiving the letter from Plaintiffs’ Architect of the contemplated repairs to Plaintiffs’ building (leased by the Hibernia Homestead Association) contacted the Architect, advised him of its receipt, and was in turn advised by the Architect that he would let him (the President) know if there *664 was any damage to the party wall so the latter could have it inspected. The President heard nothing further from the Architect or anybody for Plaintiffs until demand for payment of half the cost of the alleged repairs.
The failure of Plaintiffs’ Architect to follow up the notification (and he is a Plaintiff) would not relieve Defendant of the obligation to pay its pro rata of the cost, if Plaintiffs should ultimately prove the necessity therefor and the fairness thereof.
The failure to follow through by the Architect and the apparent indifference of the structural engineer for Plaintiffs, convinces us, as it did the District Judge, that neither considered the party wall was involved to any extent that would subject Defendant to liability therefor.
Plaintiffs’ building was admittedly in a state of debility and general disrepair. The Carondelet Street wall was leaning about several inches towards the street. Beginning in 19SS and up until the trial of the case in May 1960, Plaintiffs’ building was undergoing general repairs, part of the cost of which was paid by their tenant, Hibernia Homestead Association.
From the expert testimony and the demonstrative evidence, we must conclude that it was “a pull” from the settlement of the exterior wall of Plaintiffs’ building which caused the damage to the party wall, which Plaintiffs repaired as was their duty under LSA-C.C. Art. 2315; hence, no right of contribution is due by Defendant, under LSA-C.C. Art. 678. Under LSA-C.C. Art. 667, it was Plaintiffs’ sole duty to repair the damage. Under LSA-C.C. Arts. 681 and 682, since Plaintiffs increased the thickness of the wall for their sole benefit, they alone bear the burden of its cost.
The case of Doll v. Cacioppo, La.App., 90 So.2d 688, cited by Plaintiffs, is not apropos. There the common wall was demolished by order of the City because of its dangerous condition, and the only question was who was responsible for its replacement under LSA-C.C. Arts. 678 and 679. The question here is not who must pay for repairs, but whether or not the work done was not, in fact, the buttressing of the wall for Plaintiffs’ sole benefit, and not repairs. We, like the District Court, have reached the former conclusion.
For the reasons assigned, the judgment in favor of defendant, dismissing Plaintiffs’ suit, is affirmed; Plaintiffs-Appellants to pay the costs in both courts.
Affirmed,